**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

ANGELO J. ROSSE and DONA M. ROSSE,

                       **Plaintiffs,**

   vs.                                             **1:14-cv-00816
(MAD/RFT)**

**UNITED STATES OF AMERICA,**
                        **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **POWERS & SANTOLA, LLP**<br>39 North Pearl Street<br>2nd Floor<br>Albany, New York 12207-2205<br>Attorneys for Plaintiffs | **MARGIE A. SOEHL, ESQ.** |
| **OFFICE OF THE UNITED STATES ATTORNEY**<br>James T. Foley U.S. Courthouse<br>445 Broadway, Room 218<br>Albany, New York 12207<br>Attorneys for Defendant | **CATHLEEN B. CLARK, AUSA** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On July 7, 2014, Angelo J. Rosse and Dona M. Rosse (collectively "Plaintiffs") commenced this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2678, 2680. *See* Dkt. No. 1. Plaintiffs previously filed a claim for injury with the United States Department for Veterans Affairs ("VA") on May 30, 2013. *See* Dkt. No. 1-2. In the complaint, Plaintiffs assert claims of medical malpractice contending the following: (1) the United States of America ("Defendant") through its employee, Dr. Nazir A. Memon, failed to treat and/or properly care for Plaintiff Angelo J. Rosse ("Plaintiff"); (2) Defendant through the Albany Stratton VA

Medical Center's Clifton Park Community Based Outpatient Clinic ("clinic") failed to protect Plaintiff from Dr. Memon's abusive behavior; (3) Defendant through the clinic negligently supervised Dr. Memon; (4) Defendant through Dr. Memon and other employees did not advise Plaintiff of the risks and dangers of the medical care and treatment and Plaintiff was not able to render informed consent; and (5) Plaintiff Dona M. Rosse, as Plaintiff's spouse, was deprived of the services, society, and companionship of her husband. *See* Dkt. No. 1. Presently before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Dkt. No. 7.

## II. BACKGROUND

Plaintiff is a veteran of the United States Air Force where he worked in food service from 1976 through 1980 and was honorably discharge. *See* Dkt. No. 8-10 at 10. Plaintiff enrolled and established his primary medical care from the Albany Stratton VA Medical Center's Clifton Park Community Based Outpatient Clinic on May 22, 2006. *See* Dtk. No. 8-5. At that visit, Plaintiff presented to Dr. Memon with a social history of financial loss and symptoms of depression and significant stress. *See id.* Dr. Memon ordered a consultation with a plastic surgeon for Plaintiff's concern about a wart, ordered blood tests, and asked Plaintiff to follow up with him in one month. *See id.* On that same day, Plaintiff was also seen and evaluated by a psychologist for depressive symptoms at Dr. Memon's request, and Plaintiff was asked to follow up with the psychologist in two weeks and given an appointment to meet with a medical provider in psychiatry to discuss antidepressant medications. *See id.*

At this first appointment in 2006, it is alleged that Dr. Memon asked Plaintiff about landscape work to be done at Dr. Memon's home. *See* Dkt. No. 8-3 at 3.[1] Thereafter, Plaintiff prepared an in-depth estimate of approximately $7,000 to $8,000. *See id.* at 3-4. At a subsequent medical appointment in 2006, Dr. Memon told Plaintiff that he was only willing to pay $500 for the work, and Plaintiff declined to perform the work. *See id.* at 3; Dkt. No. 8-4 at 8, 15. No landscaping work was ever performed by Plaintiff at Dr. Memon's home. *See* Dkt. No. 8-3 at 9. Plaintiff subsequently testified at the Albany Veterans Administration Medical Center's investigation hearing that he did not believe that he received substandard medical care from Dr. Memon because he did not perform the landscaping work for $500, but his testimony was less certain at a subsequent hearing. *See id.* at 12; Dkc. No. 8-4 at 14. After that second visit when Dr. Memon told Plaintiff that the estimate was too high, Plaintiff testified that he does not recall Dr. Memon ever bringing up the topic again, stating that "it was done and over with." *See* Dkt. No. 8-3 at 16. However, Plaintiff claims that Dr. Memon said "I'm very poor, I help you guys out, you help me, you treat me nice, I help you guys out." *See id.* at 17. Plaintiff believes that these events all took place in 2006. *See* Dkt. No. 8-4 at 15.

Plaintiffs also claim that when Plaintiff sought treatment for an abscessed boil, Dr. Memon threatened him with "physical violation (i.e., a medically unnecessary rectal exam)." *See* Dkt. No. 8-1 at 19. The submitted medical records indicate that Dr. Memon treated Plaintiff for an abscess on July 9, 2009 and referred Plaintiff for a surgical consult. *See* Dkt. No. 8-12 at 25. Plaintiff consulted with a surgeon on July 19, 2009, who found that Plaintiff had a spontaneously-drained, infected sebaceous cyst that did not require excision. *See id.* at 23-24. The surgeon

---

[1] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

continued the antibiotics ordered by Dr. Memon and asked Plaintiff to return if needed. *See id.* at 24.

The allegations that Dr. Memon threatened Plaintiff with a rectal exam and intimidated Plaintiff with landscaping work are the articulated basis for Plaintiffs' claims of intimidation and abuse by Defendant. *See* Dkt. No. 8-1 at 19. Additionally, Plaintiffs claim that during the period from 2007 through 2008, Plaintiff complained to Dr. Memon of severe neck pain and Dr. Memon refused to order an MRI examination to properly diagnose or treat that condition. *See id.* According to Plaintiffs, his undiagnosed condition escalated to the point where Plaintiff was hospitalized for five days beginning on June 4, 2009. *See id.*

Plaintiffs also allege that Dr. Memon failed to properly treat Plaintiff's chronic cough in late 2008 when Dr. Memon advised Plaintiff to take cough medicine. *See id.* Plaintiffs claim that Dr. Memon's medical treatment was ineffective and inadequate to address the root cause and severity of the cough because the cough worsened, and Dr. Memon's failure to properly treat the cough continued through 2012 when Plaintiff had a severe coughing episode. *See id.* Plaintiffs claim that all the abuse and "substandard medical care received from Dr. Memon" caused physical pain and suffering, which caused "post-traumatic stress disorder (PTSD) and major depressive disorder (MDD)." *See* Dkt. No. 8-1 at 20.

Plaintiff continued to seek and received medical treatment from Dr. Memon as a primary care physician from 2006 through 2010. *See* Dkt. Nos. 8-8, 8-9, 8-10, 8-11, 8-12. Dr. Memon is noted to be Plaintiff's primary care physician of record until April 12, 2012. *See* Dkt. No. 8-11 at 72-73. On that date, Plaintiff changed primary care physicians to, and underwent a physical examination by, Dr. Lorilyn Cooley. *See id.* Although Plaintiffs claim that Dr. Memon's treatment was contagious through April 12, 2012, the submitted medical records reflect that

4

Plaintiff had not been seen or examined by Dr. Memon since November 17, 2010. *See* Dkt. No. 8-11 at 72-73.

Defendant now moves to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Specifically, Defendant argues the following: (1) Plaintiffs' claims are barred by the Federal Tort Claims Act, 28 U.S.C. § 2401(b), requiring a plaintiff to file his or her claim with the requisite agency within two years from the date of accrual; (2) Defendant did not waive sovereign immunity for Plaintiffs' allegations of intentional torts under 28 U.S.C. § 2680(h); and (3) the alleged conduct by Dr. Memon relating to landscaping work was outside the scope of Dr. Memon's employment with the VA and, therefore, sovereign immunity was not waived. *See* Dkt. No. 7.

### III. DISCUSSION

**A.     Federal Tort Claims Act**

To be sure, "'[t]he United States, as sovereign, is immune from suit save as it consents to be sued,' and hence may be sued only to the extent that it has waived sovereign immunity by enacting a statute consenting to suit." *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "'[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *See Millares Guiraldes de Tineo*, 137 F.3d at 719 (quoting *Sherwood*, 312 U.S. at 586). "Any limitations imposed by the waiver statute, whether they be substantive, procedural, or temporal, are to be strictly applied against the claimant." *Millares Guiraldes de Tineo*, 137 F.3d at 719; *see also United States v. Kubrick*, 444 U.S. 111, 117-18 (1979) (stating that the courts should neither extend nor narrow Congress' waiver of sovereign immunity).

The FTCA empowers the federal district courts with the "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b)(1). For there to be liability, the employee's act must have taken place "while acting within the scope of his [or her] office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See id.* Recovery for any claim arising out of assault and battery*,* among other listed intentional torts, is specifically excluded under the FTCA. *See* 28 U.S.C. § 2680(h). These civil actions for money damages for injuries can not be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his [or her] claim shall have been finally denied by the agency." *See* 28 U.S.C. § 2675(a). Further, the claim will "be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." *See* 28 U.S.C. § 2401(b).

**B.     Motion to Dismiss - Subject Matter Jurisdiction**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Torres v. United States*, No. 12-CV-6011, 2014 WL 4805035, *3 (E.D.N.Y. Sept. 26, 2014) (internal quotation marks and citations omitted). "When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the allegations of the complaint are construed in the plaintiff's favor." *See LaFrancis v. United States*, 66 F. Supp. 2d 335, 337 (D. Conn. 1999) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Once subject matter jurisdiction has been

6

questioned, the burden to plead and prove subject matter jurisdiction is upon the plaintiff. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999); *London v. Polishook*, 189 F.3d 196, 199 (2d Cir. 1999); *LaFrancis*, 66 F. Supp. 2d at 337. When making determinations of jurisdictional facts that are in dispute, the Court may look to evidence outside of the pleadings, including affidavits. *See Torres*, 2014 WL 4805035, at *3 (citing *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

Plaintiffs' claim for injury submitted to the VA, which is attached to Plaintiffs' complaint, *see* Dkt. No. 8-1 at 14-24, describes two factual events that Plaintiffs characterize as intimidation, abuse, and threats. *See id.* First, Plaintiffs claim that Dr. Memon "intimidate[d]" Plaintiff to performing landscaping services at Dr. Memon's home for an unreasonably low fee. *See id.* at 19. Second, Plaintiffs claim that Dr. Memon "threatened" Plaintiff with physical violation in the form of a medically unnecessary rectal exam. *See id.* Defendant argues that the Court does not have subject matter jurisdiction over these claims because Congress did not waive sovereign immunity for the intentional torts of assault and battery, as set forth in the exceptions to the FTCA. *See* 28 U.S.C. § 2680(h). Plaintiffs respond that they are not making any claims for the intentional torts of assault or battery and, therefore, the claims fall under the Court's jurisdiction. *See* Dkt. No. 9 at 7-8. In support of this proposition, Plaintiffs have submitted the affidavit of Dr. Ralph J. Carotenuto, who opines that "[m]edical malpractice is a departure from good and accepted medical practices. . . . Dealings with a patient which are not within the bounds of professionally [sic] accepted doctor-patient relationship are no less an act of malpractice tha[n] the surgeon who fails to read the chart before deciding which leg must be amputated." Dkt. No. 8-2 at ¶ 12.

Initially it should be noted that the Court does not consider Dr. Carotenuto's opinion stated above because it is an impermissible conclusion of law. *See Baldwin v. EMI Feist Catalog, Inc.*,

7

989 F. Supp. 2d 344, 349 (S.D.N.Y. 2013) (explaining that experts cannot "usurp the role of the court in determining the applicable legal standards"). Rule 704 of the Federal Rules of Evidence, which states that "[a]n opinion is not objectionable just because it embraces an ultimate issue," does not permit experts to offer opinions of legal conclusions. *See Baldwin*, 989 F. Supp. 2d at 349 (citing *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988)). The Court's review of the pleadings with attachments reveal that the allegations that Dr. Memon intimidated and threatened Plaintiff with physical abuse do not constitute acts of negligence. Assault is defined, under New York law, "as 'an intentional placing of another person in fear of imminent harmful or offensive contact.'" *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (quoting *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dep't 1998); *see also United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). "'There is, properly speaking, no such thing as a negligent assault.'" *Mazzaferro v. Albany Motel Enters.*, 127 A.D.2d 374, 376 (3rd Dep't 1987) (quoting William L. Prosser & W. Page Keeton, Torts § 10, at 46, 5th ed. 1984). Plaintiffs' factual allegations of threats fall within the ambit of the intentional tort of assault, and, accordingly, the Court finds Plaintiffs' claim is specifically excluded from this Court's jurisdiction pursuant to 28 U.S.C. § 2680(h).[2]

Plaintiffs' claim that is characterized as intimidation related to landscaping estimates for Dr. Memon's home is also outside the subject matter jurisdiction of this Court. The FTCA waives sovereign immunity for "civil actions on claims against the United States . . . for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting

---

[2] If the Court were to accept Plaintiffs' position that Dr. Memon's alleged acts constituted negligence and subject matter jurisdiction over the claim was established, the threatening behavior and subsequent injury are none the less barred. As this issue if further discussed below, the threatening acts and resulting physical injuries occurred in July 2009, beyond the FTCA's statue of limitations, and, accordingly, are time-barred. *See* Dkt. Nos. 8-1 at 19; 8-12 at 25.

within the scope of his [or her] office or employment." 28 U.S.C § 1346(b)(1). The Court applies New York law to determine whether tortious conduct occurred within the scope of employment. *See Rosenblatt v. St. John's Episcopal Hosp.*, No. 11-CV-1106, 2012 WL 294518, *6 (E.D.N.Y. Jan. 31, 2012). The scope of employment test is "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979) (internal quotation marks and citations omitted). The New York Court of Appeals has also provided the following factors to be weighed when making this determination:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Id.* at 303.

Plaintiffs' evidence in support of subject matter jurisdiction indicates that Dr. Memon approached Plaintiff about performing landscaping work for his home during Plaintiff's initial office visit in the clinic on May 22, 2006. *See* Dkt. Nos. 8-3 at 3; 8-5. Dr. Memon gave Plaintiff the address to his home to perform an estimate for the work. *See* Dkt. No. 8-3 at 3. Plaintiff went to Dr. Memon's home, had several telephone conversations with Dr. Memon about the work, and prepared an estimate. *See id.* at 3-4. At Plaintiff's follow-up medical visit with Dr. Memon, they discussed the estimate, and Dr. Memon allegedly said, "I help you guys out. I take care of you. You take care of me," or words to that effect. Dkt. Nos. 8-4 at 14; *see also* 8-3 at 17. Plaintiffs characterized these interactions as Dr. Memon intimidating Plaintiff into performing landscaping work for an unreasonably low fee leading to the implication that Dr. Memon was coercing Plaintiff into low-fee work in exchange for proper medical care. *See* Dkt. No. 8-1 at 19.

9

Plaintiffs have established that there was a connection between the time, place, and occasion of Dr. Memon's employment and the alleged tortious conduct because the conversations took place at the medical clinic and during Plaintiff's medical visits. Plaintiffs do not present any evidence or make any allegations that Defendant and Dr. Memon's past employment relationship permitted Dr. Memon to conduct personal business transactions with patients during medical appointments, and a physician conducting personal business transactions with patients during medical appointments is not an act commonly performed by a physician. With regard to the last two factors, the Court finds that Dr. Memon's alleged actions were not within the ambit of providing medical care and, likewise, the general act of seeking out personal business transactions with patients during medical visits could not reasonably have been anticipated by Defendant – to say nothing of coercing patients to work for low wages in order to get proper medical care. Accordingly, the presented jurisdictional facts do not support that Dr. Memon's acts of intimidation fell within the scope of his employment as a VA physician, and the Court grants Defendant's motion to dismiss for lack of subject matter jurisdiction on this claim.

Defendant argues that any alleged acts of negligent supervision over Dr. Memon's intentional tortious conduct are also subject to the intentional tort exception of the FTCA, as a claim arising out of an assault, and that this claim should also be dismissed. *See* Dkt. No. 7-2. Plaintiffs do not address this issue in opposition to the motion, arguing only that Plaintiffs do not maintain a claim for any intentional torts. *See* Dkt. No. 9. As discussed above, the FTCA excludes certain intentional torts, including assault, from Congress' waiver of sovereign immunity. The Supreme Court interpreted the exclusion to cover negligence claims that stem from an assault, stating that "Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery." *United States v.*

10

*Shearer*, 473 U.S. 52, 55 (1985). Three years later, the Supreme "Court clarified that the intentional tort exception does not bar all negligence claims that are related to an assault or battery committed by a government employee." *See Bodin v. Vagshenian*, 462 F.3d 481, 488 (5th Cir. 2006) (citing *Sheridan v. United States*, 487 U.S. 392, 408 (1988). Justice Kennedy stated that "§ 2680(h) does not bar tort claims based on the independent negligence of the Government." *Sheridan*, 487 U.S. at 408 (Kennedy, J., concurring).

The Second Circuit has recognized this emerging "Independent Affirmative Duty" exception, which suggests that where the government's alleged negligence is independent of the supervision of its employees, the intentional tort exception does not bar the claim. *See Guccione v. United States*, 847 F.2d 1031, 1037 (2d Cir. 1988). In other circuits, courts have found that hospitals owe an independent duty to safeguard its patients – where that duty is owed under the applicable state law – separate and apart from the intentional tortfeasor's employment status. *See Bodin v. Vagshenian*, 462 F.3d 481, 489 (5th Cir. 2006); *Gess v. United States*, 952 F. Supp. 1529, 1551 (M.D. Ala. 1996); *Bembenista v. United States*, 866 F.2d 493, 497-98 (D.C. Cir. 1989).

Similar to the states in the above-reference cases, under New York law "[a] hospital has a duty to safeguard the welfare of its patients, even from harm inflicted by third persons, measured by the capacity of the patient to provide for his or her own safety." *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 252-53 (2002) (noting that the duty is limited in scope to foreseeable risks, and it does not "render a hospital an insurer of patient safety or require it to keep each patient under constant surveillance"). A medical facility's duty to safeguard its patients is independent of any respondeat superior liability for its employees' tortious conduct. *See id.* at 251-52. Here, the Court finds that the clinic owed an independent duty to safeguard Plaintiff while he was receiving

11

medical treatment at its facility. Accordingly, the claim for Defendant's failure to protect Plaintiff from Dr. Memon's alleged intentional tort of assault is not barred by the FTCA intentional tort exception, and the claim for intimidation or coercion is not barred by the fact that Dr. Memon's actions occurred outside the scope of his employment. Defendant's motion to dismiss based upon lack of subject matter jurisdiction over Plaintiffs' claim for Defendant's failure to protect Plaintiff is denied. However, as discussed below, the failure to protect claim is barred by the two-year statute of limitations, and the Court dismisses the claim on those grounds.

**C.     Motion to Dismiss - Failure to State a Cause of Action**

The Court finds that it has subject matter jurisdiction over the following remaining claims: (1) Dr. Memon's alleged medical malpractice; (2) Dr. Memon's medical malpractice based upon lack of informed consent; (3) Plaintiff Dona M. Rosse's derivative claim; and (4) Defendant's failure to protect Plaintiff from Dr. Memon's intentional tortious conduct. *See* Dkt. No. 1. Defendant also moved to dismiss pursuant to Rule 12(b)(1) based upon Plaintiffs failure to comply with the time limitations set forth in 28 U.S.C. § 2401(b). *See* Dkt. No. 7-2. This motion was properly brought as a Rule 12(b)(1) motion based upon the existing case law at the time the motion was filed. *See, e.g., Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999) (stating that a plaintiff's failure to comply with 28 U.S.C. § 2401(b) deprives the court of subject matter jurisdiction). During the pendency of Defendant's motion, the Supreme Court determined that the time limits in 28 U.S.C. § 2401(b) are not jurisdictional requirements. *See United States v. Kwai Fun Wong*, 575 U.S. ___, ___ , Nos. 13-1074, 13-1075, 2015 WL 1808750 (2015). Accordingly, the Court finds that the FTCA's statute of limitations no longer imposes a jurisdictional bar and that the FTCA's statute of limitations should be treated as an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1); *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (stating

12

that "[w]here a statute of limitation is not jurisdictional, [] it is considered an affirmative defense"); *see also Jackson v. Donahoe*, No. 1:15-cv-3, 2015 WL 1962939, *1 (W.D. Mich. May 1, 2015).

The Court will consider and address Defendant's motion brought under Rule 12(b)(1) as a motion to dismiss under Rule 12(b)(6) for failure to state a cause of action for which relief can be granted. *See McCain v. United States*, No. 2:14-cv-92, 2015 WL 1221257, *15, n.8 (D. Vt. Mar. 17, 2015) (construing a portion of the defendant's motion pursuant to Rule 12(b)(1) as a motion brought pursuant to Rule 12(b)(6) for failure to state a claim); *Zebrowski v. Denckla*, 630 F. Supp. 1307, 1308 n.1 (E.D.N.Y. 1986) (finding that when "the parties adequately discuss the sufficiency of the claim despite the erroneous designation of the ground for the motion," the court can review a motion to dismiss for lack of subject matter jurisdiction as if it were a motion to dismiss for failure to state a claim for which relief can be granted). Here, the parties have adequately discussed the statute of limitations issue within their papers, and Plaintiff's medical records and testimony transcripts, attached to the claim – and subsequently the complaint – are properly before the Court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (stating that, on a motion to dismiss, a court can consider documents that are exhibits to the complaint); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (stating that "[p]leadings include not just the four corners of the complaint, but also any written instrument attached to it as an exhibit") (internal citations and quotation marks omitted).

While a motion for summary judgment is an appropriate procedural vehicle for addressing a statute of limitation affirmative defense, *Jackson*, 2015 WL 1962939, at *1, a motion to dismiss can also be appropriate where, as here, "the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations [] show that relief is barred by the applicable statute of

13

limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (stating that "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face" (internal quotation marks and citations omitted)).

"To properly exhaust available administrative remedies under the FTCA, a plaintiff must submit [his or] her claim to the appropriate federal agency 'within two years after the claim accrues.'" *Torres*, 2014 WL 4805035, at *3 (quoting 28 U.S.C. § 2675(a)). Although a claim usually accrues at the time that a plaintiff has been injured, courts have applied the "diligence-discovery rule" of accrual in circumstances where a plaintiff may not be able to discern the fact or cause of his injury at the time it was inflicted. *Id.* at *4*; *see also A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139-40 (2d Cir. 2011); *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008). The rule provides that "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (internal quotation marks omitted) (citing *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982) (indicating that "[a] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim").

On May 30, 2013, Plaintiffs' filed a claim of injury with the VA, and Plaintiff's medical records from the VA's health care system as well as transcripts from grievance hearings were submitted as part of Plaintiffs' claim. *See* Dkt. Nos. 1 at ¶ 4; 1-2; 8-1 at 18, 20; 8-3; 8-4; 8-7; 8-8; 8-9; 8-10; 8-11; 8-12. Although Plaintiff alleges that Dr. Memon continuously treated him from May 22, 2006 through April 12, 2012, the medical records demonstrate that April 12, 2012 was not Plaintiff's last treatment with Dr. Memon, but it was Plaintiff's first treatment with Dr. Lorilyn

14

Cooley, a primary care physician. *See* Dkt. No. 8-11 at 59. The last time that Dr. Memon provided medical care or treatment to Plaintiff took place on November 17, 2010. *See id.* at 72-74.

Defendant contends that any medical care or treatment rendered prior to May 30, 2011 are beyond the FTCA's two-year statute of limitations and, since Dr. Memon did not provide any medical care and treatment to Plaintiff from May 2011 to the present, all of Plaintiffs' claims of medical malpractice are barred. *See* Dkt. No. 7-2 at 5-7. In opposition to the motion, Plaintiffs argue that Plaintiff was unaware until 2013 that his PTSD and MDD were cause by Dr. Memon. *See* Dkt. No. 9. The Court agrees with Defendant that all of Plaintiffs' claims of medical malpractice and negligence are not timely pursuant to 28 U.S.C. § 2675(a) and should be dismissed.

Plaintiffs claim that Dr. Memon committed medical malpractice by failing to properly treat Plaintiff's abscessed boil, cervical spine (neck) pain, and chronic cough, as well as, a generalized claim that Dr. Memon did not advise Plaintiff of the risks for the medical treatment provided or the risks of not receiving proper medical care. *See* Dkt. No. 1. Dr. Memon saw and treated Plaintiff for an abscessed boil on July 9, 2009 and referred Plaintiff for a surgical consult, which took place on July 19, 2009. *See* Dkt. No. 8-12 at 25. Plaintiffs claim that Dr. Memon failed to properly treat the boil, which resulted in that surgical intervention. *See* Dkt. No. 8-1 at 19. Plaintiff also alleges that from 2007 through 2008, Plaintiff complained to Dr. Memon of severe neck pain, and Dr. Memon refused to order an MRI examination to properly diagnose or treat that condition, allegedly culminating in a hospitalization for five days in June 2009. *See id.* at 19-20. It is also claimed that Plaintiff suffered from a chronic cough that Dr. Memon failed to properly treat from late 2008 and the cough continued to worsen. *See id.*

15

Assuming that Dr. Memon deviated from accepted standards of medical care in the treatment of each of these conditions and failed to obtain Plaintiff's informed consent, the pleadings establish that Plaintiff was aware of his physical injuries at the time of the medical visits or shortly thereafter when Plaintiff's conditions did not improve. Plaintiff knew at the time of his surgical consult on July 19, 2009 that he developed an abscess allegedly due to lack of treatment. Plaintiff testified that other medical providers, after obtaining the medical history of the abscessed boil, advised him that he had a serious infection and that they were not happy with Dr. Memon's treatment. *See* Dkt. No. 8-3 at 4. Plaintiff also knew by the time of his hospitalization in June 2009, at the latest, that any alleged lack of treatment of his neck caused his continued neck pain. Likewise, Plaintiff claims that his cough continued to worsen after Dr. Memon's treatment was "ineffective" and "inadequate" to treat the cough. *See id.* at 20. Plaintiff testified that in the last couple of years of treatment with Dr. Memon – which all took place prior to 2011 – he was not comfortable being treated by Dr. Memon, and he did not want to see the doctor anymore because Plaintiff "knew the care wasn't going to be there." *See* Dkt. No. 8-3 at 13. The Court finds that Plaintiff was aware, or reasonably should have known, of his physical injuries that were a direct result of Dr. Memon's medical malpractice at the time treatment was rendered or shortly thereafter when Plaintiff's conditions did not improve. *See Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001) (stating that, at the time the plaintiff was denied treatment, he knew or reasonably should have known, both the existence and cause of his injury).

Although the Court finds that it has subject matter jurisdiction over the claims for Defendant's alleged failure to protect Plaintiff from Dr. Memon, the Court grants Defendant's motion to dismiss these claims as barred by the statute of limitations. Any negligence by

Defendant necessarily took place during Plaintiff's treatment with Dr. Memon, and this treatment ended in 2010.  Plaintiffs describe that the threat of physical violation was caused by Plaintiff's request for medical treatment of the boil on his back, which occurred in July 2009.  *See* Dkt. Nos. 8-1 at 19; 8-12 at 25.  Plaintiffs allege that Dr. Memon threatened Plaintiff and told him, if he didn't "go home and have sex with [his] wife," Dr. Memon would physically violate him.  *See* Dkt. No. 8-1 at 19.  According to Plaintiffs, this resulted in the abscessed boil and surgical intervention.  *See id.*  Further, Plaintiff testified that he immediately felt uncomfortable after Dr. Memon attempted to coerce cheap landscaping for medical care, which occurred in 2006.  *See* Dkt. No. 8-4 at 14-15.  The Court finds that Plaintiffs' pleadings establish that Plaintiff was aware of these injuries as a result of Defendant's alleged negligence prior to 2011.

Plaintiffs allege that Plaintiff "now suffers from post-traumatic stress disorder (PTSD) and major depressive disorder (MDD) resulting from the physical injuries."  Dkt. No. 1-2 at 20.  Plaintiffs do not argue that Plaintiff was unaware of his physical injuries.  Plaintiffs' only argument in opposition to dismissal on statute of limitations grounds was that Plaintiff did not have knowledge that he had been injured psychologically until February 19, 2013.  *See* Dkt. No. 9 at 5-7.  According to Plaintiffs, the accrual of their claims did not begin until Plaintiff knew of his psychological injury.  *See id.*  Accepting that Plaintiff became aware in 2013 that he was suffering from PTSD as a result of Dr. Memon's actions, the Court still finds that Plaintiffs' claims are barred by the statute of limitations.

Accrual of a statute of limitations "does not await determination of the full extent of the injury," and "one who knows that he has suffered damage from medical malpractice is not entitled to postpone the filing of a claim until the full extent of the damage is ascertained."  *Miller v. United States*, 458 F. Supp. 363, 366 (D. P.R. 1978); *see also Mangano v. Bellotti*, 187 Fed.

17

Appx. 8, 9 (1st Cir. 2006). In *K.E.S. v. United States,* 38 F.3d 1027, 1030 (8th Cir. 1994), the plaintiff was sexually abused and raped on two to three dozen occasions by an Army recruiter over a period of a couple years. *See id.* at 1029. She suffered immediate physical harm and knew that she had been injured. *See id.* at 1030. However, the plaintiff learned four years after the abuse ended that she suffered from a psychological injury, PTSD, as a result of the abuse. *See id.* The court held that the plaintiff's claim accrued at the time of the abuse and not at the time she discovered her psychological injury. *See id.* The court reasoned that "when the fact of injury and its cause are immediately known, it would eviscerate § 2401(b) to hold that the onset of post-traumatic stress disorder many years later is a separate injury that triggers a new two-year limitations period." *Id.*

Here, Plaintiff allegedly sustained physical injuries as a result of medical malpractice, and then he learned that he suffered PTSD more than two years after Dr. Memon last treated him. For the same reasons stated by the court in *K.E.S.,* 38 F.3d at 1030, Plaintiffs' medical malpractice action accrued at the time Plaintiff sustained his physical injuries and accrual was not renewed by the onset of PTSD years later.

With regard to Plaintiff Dona M. Rosse's claim for loss of consortium, New York law applies, and "[i]t is well settled under New York law that a claim for loss of consortium is a derivative action and, as such, its viability is dependent on the viability of a primary cause of action." *Dockery v. United States*, 663 F. Supp. 2d 111, 125 (N.D.N.Y. 2009) (internal quotation marks and citations omitted). Here, because Plaintiff Angelo J. Rosse's claims are dismissed, Plaintiff Dona M. Rosse's derivative loss of consortium claims are also dismissed. *See Millington v. Se. Elevator Co.*, 22 N.Y.2d 498, 508 (1968) (stating that where the plaintiff's cause of action has ended either in judgment, settlement, or otherwise, the spouse's loss of consortium claims are

barred); *Cruz v. City of New York*, 302 A.D.2d 553, 554 (2d Dep't 2003) (stating that the derivative claims must be dismissed where the direct cause of action was time-barred); *Cody v. Vill. of Lake George*, 177 A.D.2d 921, 923 (3d Dep't 1991) (finding that the termination of the plaintiff's action bars the husband's derivative action).

The Court, having reviewed the Plaintiff's medical records from the VA Medical Center together with Plaintiff's testimony transcripts and pleadings, determines that any attempt to amend the complaint would be futile because there are no facts to overcome the FTCA's two-year statute of limitations. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citing *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.* 159 F.3d 723, 728 (2d Cir. 1998)); *Mackensworth v. S.S. Am. Merch.*, 28 F.3d 246, 251 (2d Cir. 1994).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED**, and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 22, 2015
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge